IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAYASSAH A.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 19 C 1301 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| ANDREW SAUL, Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Mayassah A.'s application for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Dkt. 6.] For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 11, Pl.'s Mot.] is granted, Defendant's motion for summary judgment [dkt 19, Def.'s Mot.] is denied, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul has been substituted for his predecessor.

**BACKGROUND**

**I.     Procedural History**

On July 28, 2015, Plaintiff filed a claim for DIB, alleging disability beginning on November 25, 2014. [R. at 16, 90-97.]  Plaintiff's claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 14, 2017.  [*Id.*]  Plaintiff personally appeared and testified at the hearing and was represented by counsel.  [R. 16, 46-66.]  Vocational expert ("VE") Lee O. Knutson also testified.  [R. 16, 83-89.]  On November 27, 2017, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act.  [R. 16-29.]  The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g).  *See Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017).

**II.    The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process.  [R. 18-29.]  The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 25, 2014.  [R. 18.]  At step two, the ALJ concluded that Plaintiff had the severe impairments of bilateral knee degenerative joint disease, history of bilateral anterior cruciate ligament (ACL) tears and ruptures, history of bilateral knee arthroscopy, history of right knee total arthroplasty, obesity, cardiomyopathy, asthma, and depression, and at step three, the ALJ concluded that those impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing").  [R. 18-22.]  Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary

work except she: can occasionally operate foot controls bilaterally; can occasionally climb ramps and stairs; can never climb ladders, ropes, and scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposures to wetness, vibration, pulmonary irritants and hazards, including dangerous moving machinery and unprotected heights; after sitting for 60-90 minutes, she would require the option to stretch or stand for five to ten minutes without being off task; could perform simple, routine, and repetitive tasks; could adapt to occasional routine workplace changes; and could have occasional contact with coworkers, supervisors, and the general public. [R. 22-27.] The ALJ concluded at step four that Plaintiff had no past relevant work, and at step five that Plaintiff could perform jobs existing in significant numbers in the national economy, such as lens inserter, weight tester, and stuffer. [R. 27-28.] Accordingly, the ALJ concluded that Plaintiff is not disabled under the Social Security Act. [R. at 28.]

## **DISCUSSION**

### I.  Judicial Review

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a).

"A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327. The substantial evidence standard "is not satisfied unless the ALJ has adequately supported his conclusions." *Meuser v. Colvin*, 838 F.3d 905 (7th Cir. 2016).

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ

4

"must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351).

## II. Analysis

Plaintiff argues that the ALJ's decision should be reversed because the ALJ erred in assessing the medical opinion of Plaintiff's treating physician, erred in evaluating and accounting for Plaintiff's mental RFC, improperly assessed Plaintiff's need to be off-task, and erred in assessing Plaintiff's subjective symptom complaints. [Dkt. 12, Pl.'s Mem.; dkt. 23, Pl.'s Reply.] The Commissioner rejects these assertions, arguing that substantial evidence supported the ALJ's determination of Plaintiff's physical and mental RFC, and his corresponding determination that Plaintiff could perform sedentary work with limitations. [Dkt. 20, Def.'s Mem.] After reviewing the record and the briefs submitted by the parties, this Court agrees with Plaintiff that the ALJ erred in evaluating the medical opinion of Plaintiff's treating physician, and erred in evaluating Plaintiff's mental RFC. These errors alone necessitate a remand.

*Treating Physician's Opinion*

A treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is "well-supported" by medical findings and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018).[3] More weight is given to the opinions of treating physicians

---

[3] The Social Security Administration has modified the treating-physician rule to eliminate the "controlling weight" instruction. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources."). However, the new regulations apply only to disability applications filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply."). Plaintiff's application in this

5

because they are most familiar with the claimant's conditions and circumstances. 20 C.F.R. § 404.1527(c); *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016). If a treating physician's opinion is not given controlling weight, the ALJ must determine what value the assessment merits. *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). The regulations prescribe that the ALJ is to evaluate medical opinions according to the following factors: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. 20 C.F.R. § 404.1527(c).

"An ALJ must offer good reasons for discounting the opinion of a treating physician." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (internal quotation omitted). Further, an "ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record, a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Where the ALJ rejects a treating physician's opinion, she is "required to provide a sound explanation." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).

In this case, the ALJ assigned significant weight to the opinion of the agency's non-examining medical expert, Dr. Sai R. Nimmagadda, who opined at the hearing based on his review of the records and observation of Plaintiff's testimony that she would be limited to a reduced range of sedentary work due to her knee conditions. [R. 26-27.] The ALJ also gave some weight to the opinion of agency reviewers Dr. Charles Kenney and Dr. Raynaldo Gotanco, who both opined that Plaintiff could perform a reduced range of light work, but who gave those opinions prior to

---

case was filed in 2015, and therefore the ALJ was required to apply the former treating physician rule.

6

Plaintiff's 2016 surgeries. [R. 25-26.] As the ALJ reasoned, "such aggressive treatment" instead warranted a sedentary RFC "with additional postural and manipulative restrictions." [R. 26.]

In contrast, the ALJ assigned little weight to the opinion of Plaintiff's treating physician, Dr. Gabriel Levi, who performed knee surgery and other procedures on Plaintiff. [R. 26, 508-10.] Dr. Levi provided his opinion in an evaluation form he completed about two weeks prior to Plaintiff's August 2016 left-knee arthroscopy. [*Id.*] Dr. Levi opined that Plaintiff was unable to lift/carry, push/pull, or stand/walk, and that after her upcoming surgery, she would have pain and swelling, be unable to fully bear weight, and possibly be drowsy from pain medications. [*Id.*] The ALJ discounted Dr. Levi's opinion because he concluded: first, that although Dr. Levi had performed Plaintiff's knee surgeries, he had not treated her upper extremities; second, the contemporaneous notes did not document ongoing symptoms that would support the postural and manipulative limitations Dr. Levi assessed; and third, Dr. Levi's assessment was inconsistent with Plaintiff's hearing testimony that she has no problem using her hands or arms. [R. 26.]

Notably, two of the ALJ's three reasons for assigning Dr. Levi's opinion little weight speak only to the asserted hand and arm limitations and do not address standing or walking limitations. [*See id.*] A treating physician's opinion may have several points, however, some of which may be given controlling weight while others may not. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Michael M. v. Saul*, No. 18 C 6718, 2020 WL 374682, *6 (N.D. Ill. Jan. 23, 2020). As for Plaintiff's standing and walking limitations, the ALJ only generally stated that the records did not document sufficient ongoing symptoms, without citing or referring to any particular objective finding or treatment note. [*See id.*] "[T]he mere absence of detailed treatment notes, without more, is insufficient grounds for disbelieving the evidence of a qualified professional." *Brown v. Colvin*, 845 F.3d 247, 253 (7th Cir. 2016) (internal quotation omitted). Not only did the ALJ fail to explain

7

why he concluded the treatment notes did not support the assessed limitations, but he similarly failed to explain how any evidence in the record contradicted Dr. Levi's assessment in this regard. Even if the part of Dr. Levi's opinion assessing Plaintiff's hands and arms was appropriately discounted based on Plaintiff's contrary testimony, the ALJ was not entitled to rely on that in discounting the remainder of the opinion as to Plaintiff's standing and walking limitations. *See, e.g., Michael M.*, 2020 WL 374682, *6 (error to discount entirety of treating physician's opinion based on ALJ's determination that it included an issue reserved to the Commissioner); *Behrens v. Berryhill*, No. 16 C 5348, 2017 WL 4052372 (N.D. Ill. Sept. 13, 2017) (error to discount entirety of treating physician opinion based on inconsistency of records as to one aspect of Plaintiff's condition). In discounting Dr. Levi's medical opinion, the ALJ failed to provide good reasons and failed to support his decision with substantial evidence. *See Reinass v. Saul*, 953 F.3d 461, 465-66 (7th Cir. 2020) (decision to discount treating physician opinion lacks substantial evidence where ALJ fails to support determination that opinion was inconsistent with record); *Meuser*, 838 F.3d at 910 (substantial evidence standard is "not satisfied unless the ALJ has adequately supported his conclusions.").

This Court recognizes that the ALJ acknowledged Plaintiff's knee ailments and Dr. Levi's treatment notes at an earlier point in the opinion in which he characterized Plaintiff's condition as improving, and that his decision should be considered as a whole. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). To the extent that the Commissioner now argues that by the ALJ considering treatment records showing improvements in Plaintiff's knee conditions post-dating Dr. Levi's opinion, the ALJ appropriately discounted that opinion as inconsistent with substantial evidence [*see* Def.'s Mem. at 10- 13], the ALJ did not provide this line of reasoning in the decision. [*See* R. 16-29.] The Commissioner may not defend the ALJ's decision on a ground that the ALJ

8

did not rely on. *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88). Further, such an argument is not persuasive because a review of that discussion, however, reveals that the ALJ impermissibly "cherry-picked" from mixed reports to support his determination. *See Scott*, 647 F.3d at 740.

For example, in describing Plaintiff's condition following her 2016 surgeries, the ALJ quoted from Dr. Levi's August 2017 treatment note that Plaintiff was "doing very well," but the note does not say just that. [R. 24, quoting R. 926-29.] Instead, the note states that Plaintiff "is not doing well, she's been putting a lot of pressure on her knees and lately she's been having a lot of pain." [R. 926-29.] While the note specifies that Plaintiff's "RIGHT unicompartmental knee arthroplasty [is] doing very well," it also reports that Plaintiff is "having a lot of pain medially" in her left knee, that Plaintiff "does not feel better than prior to surgery" on her left knee, that her "left knee xray shows left knee medial arthritis," and that Dr. Levi both prescribed a narcotic pain medication and planned to perform a left-knee unicompartmental arthroplasty. [R. 926-29 (emphasis in original).]

Similarly, the ALJ quoted a March 2017 treatment note that Plaintiff had "full range of motion practically in both knees" [R. 24, quoting R. 726-27], but did not include the immediate next phrase, "but with crepitus in the left," or the physician's finding that the left knee had "osteoarthritic changes and we know that she needs a joint replacement in that also." [R. 726-27.] Notably, the ALJ concluded on these records that Plaintiff's "2016 knee surgeries were successful. In fact, the claimant has elected to undergo a left knee replacement in November 2017 to further improve her knee condition." [R. 24 (citing R. 926-929, which reported the indications for surgery as "significant limitation [of Plaintiff's] daily activities, "failed medications including NSAIDs and analgesics and narcotics and injections and arthroscopy," and "significant dysfunction of the

9

limb").] It is well-settled that "[a]n ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability." *Campbell*, 627 F.3d at 306; *Scott*, 647 F.3d at 740.

Even if the ALJ had reasoned that evidence of Plaintiff's improvement provided a good reason to discount Dr. Levi's opinion evidence, he was obliged to address the evidence of her continuing difficulties. *See, e.g.*, *Scott*, 647 F.3d at 740; *Reinaas*, 953 F.3d at 466 (error to rely on notations that claimant was doing well in recovery, while ignoring accompanying notes of continuing pain and post-surgical complications); *Scott*, 647 F.3d at 739-40 (error to cherry-pick records of improvement with treatment, while ignoring records of continuing difficulties); *Allensworth v. Colvin*, 814 F.3d 831, 834 (7th Cir. 2016) (evidence of improvement that does not provide complete or substantial relief does not itself suggest claimant's impairment is not disabling). Additionally, to the extent that Plaintiff's condition improved following any or all of her surgeries, the ALJ did not address what relevance that improvement would have had on assessing Plaintiff's condition prior to those events.

Further, the ALJ did not discuss—as he was required to if Dr. Levi's opinion was not to be controlling—Dr. Levi's specialized expertise, the length of Plaintiff's treatment relationship with him, the frequency of Plaintiff's examinations, the nature and extent of the treatment relationship, or as discussed above, the evidence supporting Dr. Levi's opinions. *See* 20 C.F.R. § 404.1527(c); *Reinaas*, 953 F.3d at 465-66; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (error to discount treating physician's opinion without consideration of the regulatory factors). Dr. Levi's opinion was of particular significance because he is an orthopedic surgeon who had treated Plaintiff for some time. Dr. Levi had diagnosed medial compartment arthritis, performed Plaintiff's June 2016 right knee arthroscopy and her July 2016 left knee steroid injection, and had scheduled her August

10

2016 left knee arthroscopy prior to providing his opinion. [R. 491-92, 498-500, 504-07, 508-10.] Accordingly, he had specialized knowledge, and he was more familiar with Plaintiff's condition than the non-examining physicians. It was especially important for the ALJ to have considered these factors given the significant weight the ALJ gave to Dr. Nimmagadda, the state-agency expert, who had never examined Plaintiff and is not a specialist in orthopedic surgery. [R. 26, 66-67, 487-90.] *See* 20 C.F.R. § 404.1527(c). Of course, the ALJ was free to discount Dr. Levi's opinion in favor of Dr. Nimmagadda's, but he was required to explain with greater care why he rejected the opinion of a treating specialist who knew Plaintiff's condition well in favor of a non-examining physician who did not know her condition as well and lacked the relevant specialized expertise. *See* 20 C.F.R. § 404.1527(c); *Scott,* 647 F. 3d at 739; *Michael M.*, 2020 WL 374682, * 8.

For these reasons, the ALJ failed to provide good reasons for the decision to discount Dr. Levi's opinion. *See Scott*, 647 F. 3d at 739.

***Concentration, Persistence, and Pace***

Plaintiff further contends that the ALJ failed to adequately account for the ALJ's own finding of Plaintiff's moderate limitations in concentration, persistence, and pace in formulating her RFC and in the hypothetical questions posed to the VE, [R. 20-21], rendering the vocational testimony unsupported by substantial evidence. [Pl.'s Mem. at 8-13; Pl.'s Reply at 6-10.] The Commissioner does not dispute that the ALJ did not expressly refer to limitations in concentration, persistence, and pace in questioning the VE, but argues that the ALJ appropriately accounted for them in other ways, and that therefore, substantial evidence supports the mental RFC determination. [Def.'s Resp. at 15-18.]

11

Both the RFC and the hypothetical question presented to a VE must incorporate the "totality of a claimant's limitations," including any "deficiencies of concentration, persistence and pace." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010); *accord Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). As a matter of form, the ALJ need not use this exact terminology in formulating questions to the VE, but as a matter of substance, "the ALJ must ensure that the VE is apprised fully of the claimant's limitations so that the VE can exclude those jobs that the claimant would be unable to perform." *Crump*, 932 F.3d at 570 (internal quotation omitted); *accord O'Connor-Spinner*, 627 F.3d at 619-20. "In most cases, however, employing terms like 'simple, repetitive tasks,' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *O'Connor-Spinner*, 627 F.3d at 620. This is because "[t]he ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *Id.* When it comes to the RFC finding, the Seventh Circuit has further "underscored that the ALJ may not generally rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace." *Crump*, 932 F.3d at 570 (internal quotation omitted). "When the ALJ supplies a deficient basis for the VE to evaluate the claimant's impairments, this error necessarily calls into doubt the VE's ensuing assessment of jobs." *Id.*

At Plaintiff's administrative hearing, the ALJ presented the VE with a series of hypotheticals asking whether a person with limitations like Plaintiff's could perform jobs in the national economy. [R. 84-86.] Instead of including in his questioning that the person would have the moderate limitations in concentration, persistence, and pace that the ALJ had found from evidence in the record, [*see* R. 20-21], the ALJ described an individual with Plaintiff's education,

12

work history, and physical limitations who could work at the sedentary level and would need a sit/stand option to stretch or stand for five to ten minutes every 60-90 minutes without being off-task, and who could perform simple, routine, repetitive tasks, with only occasional workplace changes and occasional contact with coworkers, supervisors, and the general public. [R. 84-86.]

According to the Commissioner, this was not error because the ALJ accounted for Plaintiff's concentration, persistence, and pace limitations in three ways: first, by indicating to the VE that Plaintiff would need to be off-task for a significant portion of the day less than 15%; second, by reducing Plaintiff to jobs with only occasional routine workplace changes and only occasional interpersonal interaction; and third, by including in the hypothetical and the RFC the ability to stretch or stand without being off task, which the Commissioner says accommodates Plaintiff's concentration, persistence, and pace limitations because the finding of those limitations had rested partially on Plaintiff's need to stand several times during the hearing. [Def.'s Mem. at 16-17.] These arguments, however, are unpersuasive.

First, although the ALJ elicited testimony from the VE that the jobs that he testified were available to a hypothetical person with Plaintiff's limitations would not be available if that person also would be off-task for more than 15% of the day, the ALJ did not include any off-task time in formulating the RFC, nor address whether and how any off-task time would accommodate Plaintiff's concentration, persistence, and pace limitations. [*See* R. 22-27, 86-87.] This is especially notable given the ALJ's crediting of the evidence in the record of Plaintiff's inability to maintain concentration and her difficulties with changes in routine, as well as the fact that by the ALJ's direction, the only testifying physician, Dr. Nimmagadda, provided no opinion as to Plaintiff's mental functioning. [*See* R. 21, 69.]

13

Second, the Seventh Circuit has made clear that limiting a claimant's workplace changes or interpersonal interaction as the ALJ did here [R. 22-27, 84-86], does not account for limitations in concentration, persistence, and pace. *See Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018) (rejecting similar argument, and finding that confining claimant to simple, routine tasks and limited interactions with others fails to accommodate for temperamental deficiencies and limitations in concentration, persistence, and pace).

Finally, the Court cannot agree with the Commissioner's assertion that a stretch/stand option that specifically requires Plaintiff to remain on task nevertheless addressed the limitations in Plaintiff's concentration, persistence, and pace that the ALJ had found. [*See* Def.'s Resp. at 17.] This is especially so here, where the ALJ expressly explained that the ability to occasionally stand was included in the RFC to accommodate Plaintiff's **physical** impairments, while the limitation to work involving simple, routine and repetitive tasks and no more than occasional interaction with coworkers, supervisors, and the general public accommodated the combined effects of her impairments, including pain, and impaired memory and concentration. [*See* R. 27.] This formulation follows Dr. Nimmagadda's testimony, and the ALJ's notation that Dr. Nimmagadda would opine only as to Plaintiff's physical condition. [R. 69.]

Accordingly, the VE's assessment of jobs available to Plaintiff failed to account for all of her limitations, and the ALJ's corresponding RFC determination lacked substantial evidence. *See Crump*, 932 F.3d at 570.

## **CONCLUSION**

For each of these reasons, the Court determines that a remand is required in order to properly weigh the opinion evidence and to assess Plaintiff's RFC. *See Briscoe*, 425 F.3d 345. Therefore, Plaintiff's motion for summary judgment [11] is granted, and the Commissioner's

motion for summary judgment [19] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: 12/14/2020

BETH W. JANTZ
United States Magistrate Judge